ACCEPTED
04-15-00342-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/11/2015 4:25:29 PM
KEITH HOTTLE
CLERK

**No. 04-15-00342-CV**

**IN THE COURT OF APPEALS**
**FOURTH JUDICIAL DISTRICT**
**SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

11/12/2015 4:25:29 PM

KEITH E. HOTTLE
Clerk

**VILLA DIJON CONDOMINIUM ASSOCIATION, INC. AND
IMPLICITY MANAGEMENT COMPANY**

**Appellants**

**v.**

**MARY WINTERS AND MILA CHEATOM**

**Appellees**

On Appeal from the
166th Judicial District of Bexar County, Texas
Cause No. 2015-CI-03926

**APPELLANTS' BRIEF**

> **Robert W. Loree**
> State Bar No. 12579200
> **LOREE & LIPSCOMB**
> 777 East Sonterra Blvd., Ste. 320
> San Antonio, Texas 78258
> Telephone: (210) 404-1320
> Facsimile:   (210) 404-1310
>
> **ATTORNEY FOR APPELLANTS**

**ORAL ARGUMENT REQUESTED**

i

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANTS:**                            Villa Dijon Condominium Association, Inc. and Implicity Management Company [1]

Appellants' Counsel:            Robert W. Loree
State Bar No. 12579200
Todd Lipscomb
State Bar No. 00789836
Cassandra Pruski
State Bar No. 24083690
LOREE & LIPSCOMB
777 E. Sonterra Blvd., Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310

**APPELLEES:**                           Mary Winters and Mila Cheatom

Appellees' Counsel:             Jacob S. Leibowitz
State Bar No. 24066930
LEIBOWITZ LAW FIRM PLLC
700 N St Mary's St, STE 1750
San Antonio, Texas 78205

**TRIAL COURT JUDGE:**         The Honorable Stephani Walsh
District Judge of the 45th District Court
Bexar County Courthouse
100 Dolorosa
San Antonio, TX 78205

---

[1] Appellants will be referred to in this brief in short form individually as "Villa Dijon" and "Implicity."

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................. ii

TABLE OF CONTENTS ........................................................................................... iii

INDEX OF AUTHORITIES ..................................................................................... iv

    Cases .................................................................................................................... iv

    Rules .................................................................................................................... iv

RECORD REFERENCES ........................................................................................... v

STATEMENT OF THE CASE .................................................................................. 1

ISSUES PRESENTED ............................................................................................... 2

STATEMENT OF FACTS ......................................................................................... 2

SUMMARY OF THE ARGUMENT ......................................................................... 5

ARGUMENT AND AUTHORITIES ......................................................................... 6

    I.   Standard of Review .................................................................................. 6

    II.  The trial court erred in determining that it lacked plenary power to grant Appellants' motion for new trial. ....................................................... 7

    III. The Court erred in refusing to grant Appellants a reasonable extension of time to complete filing under Rule 21(f)(6) of the Texas Rules of Civil Procedure. ............................................................................................... 11

    IV. Conclusion ............................................................................................ 13

CERTIFICATE OF COMPLIANCE ....................................................................... 14

CERTIFICATE OF SERVICE ................................................................................. 14

INDEX TO APPENDIX ........................................................................................... 15

# INDEX OF AUTHORITIES

**Cases**

*Aziz v. Waris*, 2015 WL 5076295
(Tex.App.— Houston [1st Dist] Aug. 27, 2015, no pet.) ............................................. 6

*Biffle v. Morton Rubber Indus., Inc.,* 785 S.W.2d 143 (Tex.1990) ....................................... 7, 8

*Cappetta v. Hermes*,
222 S.W.3d 160 (Tex.App.—San Antonio 2006, rehearing overruled) .................. 12

*Jamar v. Patterson,* 868 S.W.2d 318 (Tex.1994) ..................................................................... 7

*Methodist Hospitals of Dallas v. Corporate Communicators, Inc.*,
806 S.W.2d 879 (Tex.App.—Dallas 1991, writ denied) ............................................ 11

*Reed v. Marmaxx Operating Corp.*,
No. 4:14-CV-10, 2015 WL 123951 (E.D. Tex. Jan. 7, 2015) ..................................... 6

*Rosedale Partners, Ltd. v. 131st Judicial District Court, Bexar County,*,
869 S.W.2d 1643, 646 (Tex. App.—San Antonio 1994, no pet.) .............................. 12

*Strong v. Jackson*,
2005 WL 1458074 (Tex. App.—San Antonio June 22, 2005, no pet.) .................... 12

*Warner v. Glass,* 135 S.W.3d 681 (Tex.2004) ................................................................. 7, 8,

**Rules**

TEX. R. APP. P. 9.4(i) ................................................................................................................ 14

TEX. R. CIV. P. 1 ....................................................................................................................... 10

TEX. R. CIV. P. 21 ..................................................................................................................... 5, 8

TEX. R. CIV. P. 21(f)(5) ............................................................................................................ 8, 13

TEX. R. CIV. P. 21(f)(6) ................................................................................... 2, 6, 7, 11, 13

Tex. R. Civ. P. 21(f)(11) ................................................................................................ 8

Tex. R. Civ. P. 21(f)(13) ................................................................................................ 8

Tex. R. Civ. P. 329b....................................................................................................7, 11

## **RECORD REFERENCES**

The record references used throughout Appellants' Brief are the following:

*CR _*        Clerk's Record

*SCR _*        Supplemental Clerk's Record

*1 RR _*        Volume one of the Reporter's Record

*2 RR _*        Volume two of the Reporter's Record

*3 RR _*        Volume three of the Reporter's Record

*4 RR _*        Volume four of the Reporter's Record

*5 RR _*        Volume five of the Reporter's Record

# STATEMENT OF THE CASE

**Nature of the case:**

Plaintiffs/Appellees, Mary Winters and Mila Cheatom, who are condominium owners, brought suit against Defendants/Appellants, Villa Dijon Condominium Association, Inc. and Implicity Management Company, for breach of contract and negligence for failing to make foundation repairs to Plaintiffs' condominiums. (*CR 1-9*) Villa Dijon is a condominium association, who hired Implicity, a management company, to manage that association and the condominium complex. (*CR 1-9*)

**The Default Judgment:**

Winters and Cheatom filed suit on January 6, 2015. (*CR 1-9*) Appellants failed to answer timely. On March 9, 2015, Plaintiffs took a default judgment against Villa Dijon and Implicity. (*CR 10-15*) The order granting the default judgment also severed the case against Appellants into a new cause number to make the default judgment final. (*CR 14-15*)

**The Motion for New Trial:**

Within 30 days of this default judgment, Appellants filed a motion for new trial on April 6, 2015 and set it for a hearing on April 10, 2015. (*CR 38*) On the day of the hearing, Appellees filed a response to the motion for new trial. (*CR 56*) At the April 10 hearing, the trial court heard each party's argument, considered their evidence, and then granted Villa Dijon's and Implicity's motion for new trial on the record and notated this granting of the motion in her judge's notes for the hearing. (*2 RR 11, 2 RR 19, SCR 44*)

**The Motion for Rehearing:**

On April 13, 2015, Appellees filed a motion for rehearing and motion to deny entry of order granting new trial alleging that the district court did not have plenary power and jurisdiction to decide the motion for new trial. (*CR 63*) Appellees set the hearing on this motion for April 30, 2015. (*CR 66*) Appellants responded claiming the district court did have jurisdiction as the motion was timely filed, or alternatively, requesting that the district court order the motion timely filed pursuant to Rule 21(f)(6) of the Texas Rule of Civil Procedure. (*SCR 1*) After holding two days of hearings on Appellees' motion, the district court determined it did not have plenary power to grant the motion for new trial. (*4 RR 17*) Appellants filed their notice of appeal on June 3, 2015. (*CR 151*)

**The Fourth Court's Show Cause Order:**

On September 28, 2015, Appellees filed a motion to dismiss Appellants' appeal claiming that the Fourth Court lacked jurisdiction to consider this appeal. On September 10, 2015, the Fourth Court issued a show cause order to Appellants on the jurisdictional question raised by Appellees. On September 25, 2015, Appellants responded to this show cause order. In an October 1, 2015 order, the Fourth Court held that it had jurisdiction of this appeal and that the Bexar County District Clerk made an apparent error in not filing Appellants' motion for new trial in the severed cause number.

## ISSUES PRESENTED

1) The trial court erred in determining it lacked plenary power to enter an order on Villa Dijon's and Implicity's motion for new trial because the motion for new trial was timely filed.

2) If the motion for new trial was not timely filed, the trial court erred in refusing to order that the motion was timely filed pursuant to Rule 21(f)(6) of the Texas Rule of Civil Procedure, which mandates that the trial court allow Appellants an extension of time to file due to technical filing error in the district court's electronic filing system.

## STATEMENT OF FACTS

Appellees are two individuals who purchased condominiums in the Villa Dijon Condominium complex. (*CR 1-9*) They claim that the slab foundation under their condominiums is defective, that Villa Dijon and Implicity have a contractual and common law duty to repair the foundation under their units, and that Villa Dijon and Implicity breached that duty by failing to repair the foundation. (*CR 1-9*)

Ms. Winters and Ms. Cheatom filed suit on January 6, 2015 alleging breach of contract and negligence against Villa Dijon and Implicity. (*CR 1-9*) Appellants' registered agent, Jody Marquez, received service on January 23, 2015. (*SCR 13*) Her office forwarded the citations to the insurer's agent, Commercial Insurance Solutions,

shortly thereafter as was her usual course of business when sued was served. (*SCR 13*) The insurer's agent then mistakenly forwarded the citations to York Risk Services Group, Inc., a third party administrator, instead of Hiscox, the applicable insurance carrier. (*3 RR 8-11, 14-16, 20-25*) As a result, Hiscox was not notified and did not answer on behalf of Implicity and Villa Dijon. (*3 RR 7-8, 9-10, 21*)

On March 9, 2015, the trial court granted Plaintiffs a default judgment against Villa Dijon and Implicity, who were two of the five Defendants in the original case No. 2015-CI-00148, and then severed the claims against Villa Dijon and Implicity into a new cause number, 2015-CI-03926. (*CR 10-15*) On April 6, 2015, Appellants timely filed a motion for new trial bearing both the original and severed cause numbers. (*CR 38, 2 RR 1*) During the filing of the motion for new trial, Appellants attempted to file the motion electronically in both the original and severed cause numbers, but were prohibited from electronically filing into the severed case as the case was closed in error by the Bexar County District Clerk's office. (*SCR 6-7, 3 RR 19, 5 RR 274*)

Appellants' counsel's legal secretary, Lisa Hernandez, contacted the clerk's office who led her to believe the motion would be filed in both cause numbers. (*SCR 6-7, 3 RR 19-22*) Shortly after the phone call, Mrs. Hernandez received an email confirmation attaching a file stamped copy of the motion for new trial bearing both the original and served cause numbers that indicated that the filing was accepted. (*3 RR 22, SCR 7-8*) Appellants' counsel did not receive notice that the motion was not filed in both cases or that the filing was rejected in any way. (*3 RR 28-29*)

3

Appellees received notice of the motion for new trial and responded. (*CR 56-60*) On April 10, 2015, the trial court then held a hearing on the motion for new trial at which both Appellees and Appellants appeared, presented evidence, and argued the merits of the motion. (*2 RR*) The trial court granted Villa Dijon's and Implicity's motion for new trial contingent upon payment of attorney's fees and court costs by Appellants to Appellees. The trial court notated and signed her ruling granting the motion in the judge's notes for the hearing. (*2 RR 11, 2 RR 19, SCR 44*) Appellants tendered that payment to Appellees. (*SCR 46-47, 4 RR 17-18*)

On April 13, 2015, after appellees received payment and a proposed formal order from Appellants, Appellees filed a motion for rehearing in the severed cause alleging for the first time that the trial court did not have jurisdiction to set aside the default judgment because the motion for new trial was never technically filed in the severed cause, but was only technically filed in the original case even though Appellants had a file marked copy of the motion for new trial bearing both the original and severed cause numbers. (*CR 63, 38*) While Appellees filed their motion for rehearing three days after the hearing on the motion for new trial*, Appellees did not set this motion for hearing until April 30, 2015, more than two weeks after the motion was filed and a week after Appellants' deadline to file a motion for extension of time to file a notice of appeal. (*CR 63*)

Villa Dijon and Implicity responded to the motion for rehearing and contended that among various grounds, the failure to file the motion for new trial in the severed

cause was a result of a mistake of the district clerk or the electronic filing system, which the trial court could correct under the Texas Rules of Civil Procedure. (*CR 145*) In two days of hearings on April 30 and May 1, 2015, the trial court did not correct this mistake. (*4 RR 15-17*) The trial also determined that when it heard Appellants' motion for new trial on the severed case on April 10, 2015, it had already lost jurisdiction and the power to decide it on April 8, 2015 (30 days after the default judgment) because the motion for new trial had not technically been filed in the severed case. (*4 RR 15*)

Appellants then filed their notice of appeal on June 3, 2015. (*CR 151*)

## SUMMARY OF THE ARGUMENT

Appellants assert that the trial court erred in determining it did not have jurisdiction to grant the motion for new trial since that motion was timely filed and extended the court's plenary power. Pursuant to Rule 21 of the Texas Rules of Civil Procedure "An electronically filed document is deemed filed when transmitted to the filing party's electronic filing service provider." TEX. R. CIV. P. 21. It is undisputed that Appellants' motion for new trial was timely transmitted to the district clerk and accepted for filing at April 6, 2015 at 2:49:18 PM and there is no rule or law ordering that the document be submitted twice for filing in a second case when the document bears two cause numbers. (*SCR 8*) The motion was thus timely filed and extended the court's plenary power. (*SCR 8*) Therefore, the trial court erred in determining that it

5

had no plenary power, and this case should be remanded for a new trial consistent with the trial court's ruling at the hearing granting Villa Dijon's and Implicity's motion for new trial.

If the Fourth Court determines that the motion was not timely filed, the trial court still erred in refusing Appellants' request for an extension to complete the filing due to technical error as required by Rule 21(f)(6) of the Texas Rules of Civil Procedure. At the hearings on the motion for rehearing, Appellants presented evidence of a technical failure in the filing system resulting in the inability to file the motion in the severed cause, thereby missing the deadline and requested relief from the trial court. (*SCR 1-7, 3 RR 19-22, 29-30*) The trial court, however, erroneously refused to grant Appellants the relief required by Rule 21(f)(6) and this case should be remanded so that Appellants can cure the filing error.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

After a diligent search, Appellants have not been able to find any authority reviewing the application of Rule 21(f)(6) of the Texas Rules of Civil Procedure.[2] *See*

---

[2] As it only became effective on January 1, 2014, Appellants were only able to find two cases addressing Rule 21(f)(6) and both of those cases only noted the existence of the rule in dicta. *See Reed v. Marmaxx Operating Corp.*, No. 4:14-CV-10, 2015 WL 123951, at *5 (E.D. Tex. Jan. 7, 2015); *Aziz v. Waris*, No. 01-15-00175-CV, 2015 WL 5076295, at *3 (Tex.App.— Houston [1st Dist] Aug. 27, 2015, no pet.)

6

TEX. R. CIV. P. 21(f)(6). Appellants believe that the application of 21(f)(6) should be reviewed de novo as Rule 21(f)(6) does not grant discretion to the District Court. *Id.*

## II. The trial court erred in determining that it lacked plenary power to grant Appellants' motion for new trial.

It is undisputed that if Appellants' motion for new trial was timely filed, the trial court had plenary power to hear and grant a new trial in this case. *See* TEX. R. CIV. P. 329b. After it had heard and granted the motion for new trial, however, the trial court ruled that the motion was not timely filed in the severed cause. (*4 RR 14-19*) As such, if this Court finds that the motion was timely filed, the case must be remanded for a new trial pursuant to the trial court's granting of the motion for new trial.

"Generally, 'an instrument is deemed in law filed at the time it is left with the clerk, regardless of whether or not a file mark is placed on the instrument and regardless of whether the file mark gives some other date of filing.' " *Warner v. Glass,* 135 S.W.3d 681, 684 (Tex.2004) (per curiam) (quoting *Standard Fire Ins. Co. v. LaCoke,* 585 S.W.2d 678, 680 (Tex.1979)); *see also Jamar v. Patterson,* 868 S.W.2d 318, 319 (Tex.1994) (per curiam) ("In a long line of cases, this court has held that a document is 'filed' when it is tendered to the clerk, or otherwise put under the custody or control of the clerk."). The purpose of these rules is to protect a party from being penalized by the errors and omissions of the court clerk. *See Biffle v. Morton Rubber Indus., Inc.,* 785 S.W.2d 143, 144 (Tex.1990)(per curiam). Likewise, under the Texas Rules of Civil

7

Procedure, "An electronically filed document is deemed filed when transmitted to the filing party's electronic filing service provider." TEX. R. CIV. P. 21(f)(5).

There is no rule or law requiring that a document be electronically tendered to the clerk twice when a party is filing the same document in two cases. *See generally* TEX. R. CIV. P. 21; BEXAR COUNTY LOCAL RULES FOR ELECTRONIC FILING (setting out the parameters for E-filing in Bexar County). The rules specifically state: "The clerk may not refuse to file a document that fails to conform with this rule. But the clerk may identify the error to be corrected and state a deadline for the party to resubmit the document in a conforming format." TEX. R. CIV. P. 21(f)(11). If a party needed to re-tender an identical document for filing in a second case, then pursuant to Rule 21(f)(11), the clerk should conditionally file the document bearing both cause numbers, identify the error in the filing, and give the filer a deadline to re-tender the document. Simply put, "Once a party has satisfied his duty to put a legal instrument in the custody and the control of the court clerk, he should not be penalized for errors made by the court clerk." *Warner v. Glass,* 135 S.W.3d 681, 684 (Tex.2004) (per curiam) (citing *Biffle*, 785 S.W.2d at 144).

Logistically, there is no need for a second tender because, "The clerk is not required to keep both paper and electronic versions of the same document unless otherwise required by local rule." TEX. R. CIV. P. 21(f)(13). If an identical document is to be filed, pursuant to the rules, the Clerk only needs one electronic copy.

In this case, it is undisputed that the Appellants tendered the motion for new trial bearing both cause numbers to the clerk timely. (*SCR 8*) It is also undisputed that the clerk did not reject the filing, notify Appellants of any error, or give Appellants a deadline to re-file. (*3 RR 22, 28-29, SCR 7-8*) At the hearing, Appellees only complained that it wasn't placed in the hands of the clerk "in both cases." (*3 RR 33*) The trial court agreed, and ruled that it did not have plenary power at the time of the hearing on the motion for new trial in the severed case. (*4 RR 14-17*) The heightened burden advanced by the trial court is simply not supported by common law or Texas Rules of Civil Procedure and as such, the ruling that the trial court lacked plenary power was erroneous as a matter of law.

Prior to e-filing, if Appellants had hand-filed or filed the motion by mail in the exact same format as it was electronically tendered in this case, it would have been deemed timely filed in both cases as it bore both cause numbers. (*SCR 8-13*); *See generally Warner v. Glass,* 135 S.W.3d 681, 684 (Tex.2004)(per curiam). When the Supreme Court mandated e-filing, it also amended Rule 21 of the Texas Rules of Civil Procedure to establish the proper parameters for e-filing in this state. *See* TEXAS SUPREME COURT MISC. DOCKET NO. 13-9165. The Supreme Court did not create the burden to which the trial court held Appellants. It did not order that two separate electronic transmissions were required to deem an identical motion timely filed in multiple cases and this Court should not either.

Furthermore, neither Appellees nor the trial court was prejudiced by Appellants' single transmission of the motion for new trial. The trial court was able to read the motion and hold a hearing on its merits. Appellees received notice of the motion, were able to timely file its response, presented evidence on the motion's merits, and were able to fully argue the merits of the motion at that time. (*SCR 14-15, CR 56-62, 2 RR*)

It was not until after the motion for new trial was fully briefed, argued, and orally granted that anyone discovered the motion for new trial had only been filed in one of the two cases. (*3 RR 5-9*) The trial court's ruling was purely based upon a technicality that is not favored by the modern approach of liberal interpretation for the Texas Rules of Civil Procedure and penchant for deciding cases on the merits. *See* TEX. R. CIV. P. 1 (mandating that all rules of civil procedure be given a liberal construction to promote the just, fair, equitable and impartial adjudication of the rights of litigants.).

Under the common law and the Texas Rules of Civil Procedure, the trial court's reliance on Appellees' hyper-technical contention that the district clerk had not actually filed the motion in the severed cause was erroneous as was her ruling that Appellants' filed marked motion for new trial bearing both cause numbers did not extended the trial court's plenary power. Consequently, this case should be remanded for a new trial constituent with the trial court's ruling on the merits of Appellants'

10

motion for new trial. Such a result would also satisfy the goal of the Texas Rules of Civil Procedure to have cases decided on their merits and not on technicalities.

**III. The Court erred in refusing to grant Appellants a reasonable extension of time to complete filing under Rule 21(f)(6) of the Texas Rules of Civil Procedure.**

As discussed above, Rule 21 of the Texas Rules of Civil Procedure provides the rules for e-filing in Texas. Section 21(f)(6) of Rule 21 provides:

> If a document is untimely due to a technical failure or a system outage, the filing party *may seek appropriate relief from the court*. If the missed deadline is one imposed by these rules, *the filing party <u>must</u> be given a reasonable extension* of time to complete the filing. TEX. R. CIV. P. 21(f)(6)(emphasis added).

This rule clearly requires that an extension of a deadline be given if a filing party seeks relief from the court and shows 1) a technical failure and 2) a missed deadline imposed by the Texas Rules of Civil Procedure. *Id.* The rule does not reserve any discretion for the trial court, but states that the extension "must be given." *Id.*

It is undisputed that the deadline for filing a motion for new trial is imposed by Rule 329b of the Texas Rules of Civil Procedure and that in their response to Appellees' motion for rehearing, Appellants requested relief under 21(f)(6) to complete the filing of its motion for new trial. TEX. R. CIV. P. 329b; (*CR 146-150, SCR 1-15*) If this Court determines that the motion for new trial was not timely filed, then the untimeliness of filing was "due to a technical error," and the trial court was required to give Appellants an extension. Tex. R. Civ. P. 21(f)(6). *See generally, Methodist Hospitals of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 884 (Tex.App.—

Dallas 1991, writ denied)(holding "the court has no power, where no discretion is reserved, to suspend or modify any rule.")

The record clearly shows a technical error occurred when Appellants attempted to file the motion for new trial a second time into the severed cause number. Mrs. Hernandez attempted to file the document in the severed case. The Bexar County District Court's e-filing system, however, would not allow her to file it (*SCR 6-7, 3 RR 19, 5 RR 274*), because the Bexar County District Clerk had prematurely closed the case in error after the default judgment was filed as evident from the docket sheet entered by Appellees. (*5 RR 274*) Appellants note that this is not the first time that the Bexar County District Clerk's Office has closed a case in error. It has a history of doing so. *See Cappetta v. Hermes*, 222 S.W.3d 160, 163 (Tex.App.—San Antonio 2006, rehearing overruled)(district clerk misinformed counsel as to the status of the case and noted in the record the case was closed pending a ruling in the bankruptcy court); *Rosedale Partners, Ltd. v. 131st Judicial District Court, Bexar County*, 869 S.W.2d 643, 646 (Tex. App.—San Antonio 1994, no pet)(determining that all claims and defenses were not disposed when "the docket sheet shows an entry, contemporaneous with the entry of the default judgment, indicating 'case closed'"); *Strong v. Jackson*, No. 04-04-00135-CV, 2005 WL 1458074, at *1 (Tex. App.—San Antonio June 22, 2005, no pet.)(determining summary judgment did not dispose all issues in the case and noting "the district clerk closed the case with the notation "Case Closed Summary Judgment" on the same day the trial judge signed the summary judgment").

Mrs. Hernandez then called the clerk's office to notify them of the error and to get them to reopen the case. (*SCR 6-7, 3 RR 19-22*) The clerk gave her the impression that the document would be filed in both cases and the case would be reopened. (*3 RR 22, 29; SCR 7-8*) The severed case was later reopened as evident by the subsequent electronic filings, but unbeknownst to Appellants its motion for new trial had not been filed in both cases. (*3 RR 28-29, 4 RR 17, 5 RR 274, CR 56-62*)

This error was clearly a technical error and the trial court was required to give Appellants the requested extension. It did not, and the case should be remanded so that Appellants can complete the filing.

## IV.    Conclusion

In conclusion, this case must be remanded because the motion for new trial was timely filed pursuant to Rule 21(f)(5) of the Texas Rules of Civil Procedure and trial court erred in determining that it lacked plenary power to rule on Appellants' motion for new trial. *See* TEX. R. CIV. P. 21(f)(5). Even if this Court finds that the motion for new trial was not timely filed, the case must still be remanded so that Appellants are granted an extension to complete the filing pursuant to Rule 21(f)(6) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 21(f)(6). Ordering otherwise would be contrary to the rules of civil procedure and would go against the modern trend of deciding cases on the merits, rather than on procedural technicalities.

Respectfully submitted,

*Loree & Lipscomb*
777 E. Sonterra Blvd., Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310



By: s/ Robert W. Loree
      Robert W. Loree
      State Bar No. 12579200

Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in word processing software used to produce this document, I certify that the length of this document is 3,276 words excluding those portions of the document identified in TEX. R. APP. P. 9.4(i).


s/ Robert W. Loree
Robert W. Loree

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2015, Appellants served a true and correct copy of this response on counsel for Appellees, Jacob S. Leibowitz, 700 North St. Mary's Street, Suite 1750, San Antonio, Texas, by electronic transmission through the Court's electronic filing service.


s/ Robert W. Loree
Robert W. Loree

# INDEX TO APPENDIX

Order on Final Default Judgment ..............................................................................Tab A

Motion of Defendant's Villa Dijon Condominium Association, Inc. and
Implicity Management Company to Set Aside a Default Judgment and for a
New Trial ...................................................................................................................Tab B

Judge's Notes on Motion for New Trial....................................................................Tab C

Reporter's Record Volume 4, Transcript of May 1, 2015 hearing..........................Tab D

Texas Rule of Civil Procedure 21 .............................................................................Tab E

# APPENDIX A

$ XXX
50.00
Severance



2015CI03926 -P00001

| | | |
|---|---|---|
| MARY WINTERS AND MILA CHEATOM **FEE PAID** | § § § § | |
| v. | § | IN THE DISTRICT COURT |
| 738 PROPERTY, LLC; CHAPA & FULLER REALTY, LLC; DENCITY DEVELOPMENT, LLC; VILLA DIJON CONDOMINIUM ASSOCIATION, INC; AND IMPLICITY MANAGEMENT COMPANY. | § § § § § § § § § | OF BEXAR COUNTY, TEXAS 166th JUDICIAL DISTRICT |

## FINAL DEFAULT JUDGMENT AS TO
## VILLA DIJON CONDOMINIUM ASSOCIATION, INC. AND
## IMPLICITY MANAGEMENT COMPANY

**ON THIS DAY** Plaintiffs MARY WINTERS and MILA CHEATOM (collectively, "Plaintiffs") moved for a final default judgment against Defendants VILLA DIJON CONDOMINIUM ASSOCIATION, INC. ("Villa Dijon") and IMPLICITY MANAGEMENT COMPANY ("Implicity") (collectively, "Default Defendants"). At the hearing, Plaintiffs appeared in person and through their attorney. Default Defendants did not appear. The Court determined it had jurisdiction over the subject matter and the parties in this proceeding. After considering the pleadings, the papers on file in this case, and the evidence Plaintiffs presented on liability, damages and attorney fees, the Court **GRANTS** Plaintiffs' motion for final default judgment and **RENDERS** judgment for Plaintiffs MARY WINTERS and MILA CHEATOM against VILLA DIJON CONDOMINIUM ASSOCIATION, INC. and IMPLICITY MANAGEMENT COMPANY.

The Court **FINDS** the following:

1. Defendant Villa Dijon was served with citation and a copy of Plaintiffs' Original Petition on January 23, 2015 in accordance with the Texas Rules of Civil Procedure.

2. Defendant Implicity was served with citation and a copy of Plaintiffs' Original Petition on January 23, 2015 in accordance with the Texas Rules of Civil Procedure.

3. The citations and proofs of service were on file with this Court for at least ten days before the judgment was rendered.

4. The deadline for Default Defendants to file an answer was March 3, 2015 by 5:00PM.

5. Default Defendants did not file an answer or any other pleading constituting an answer.

6. The Court granted a Default Judgment With Respect to Liability as to Villa Dijon and Implicity on March 6, 2015.

7. The **last known address** for VILLA DIJON CONDOMINIUM ASSOCIATION, INC. is:

   Villa Dijon Condominium Association, Inc.
   603 N New Braunfels Ave, STE 101
   San Antonio, Texas 78217-6398

8. The **last known address** for IMPLICITY MANAGEMENT COMPANY is:

   Implicity Management Company
   603 N New Braunfels Ave, STE 101
   San Antonio, Texas 78217-6398

9. The Court held a hearing at which Plaintiffs presented evidence by way of affidavits and exhibits admitted into evidence.

DOCUMENT SCANNED AS FILED

## DAMAGES

As a result of the evidence presented at this hearing, the Court further **FINDS** that MARY WINTERS sustained damages in the following amounts:

10. Loss of Market Value      $ 66,115.00

11. Loss of Use      $ 11,623.50

12. Condominium Owner's Association Fees      $ 3,085.95

The Court **ORDERS** that MARY WINTERS recover from Villa Dijon and Implicity the damages listed in 10-12.

As a result of the evidence presented at this hearing, the Court further **FINDS** that MILA CHEATOM sustained damages in the following amounts:

13. Loss of Market Value      $ 53,720.00

14. Loss of Use      $ 8,302.50

15. Condominium Owner's Association Fees      $ 3,090.00

16. Mental Anguish in the Past      $ 18,250.00

The Court **ORDERS** that MILA CHEATOM recover from Villa Dijon and Implicity the damages listed in 13-16.

DOCUMENT SCANNED AS FILED

## COURT COSTS AND ATTORNEY FEES

As a result of the evidence presented at this hearing, the Court further **FINDS** that MARY WINTERS & MILA CHEATOM incurred the following reasonable and necessary court costs and reasonable and necessary attorney fees:

17. Mary Winters Court Costs     $ 120.20

18. Mila Cheatom Court Costs     $ 120.20

19. Mary Winters Attorney Fee     $ 9,187.50

20. Mila Cheatom Attorney Fee     $ 9,187.50

The Court **ORDERS** that MARY WINTERS and MILA CHEATOM recover from Villa Dijon and Implicity the court costs and attorney fees listed in 17-20.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

The Court **ORDERS** that Plaintiff MARY WINTERS recover prejudgment interest on $ 80,824.45 (the actual damages awarded and excluding court costs and attorney fees) at the rate of 5% from April 28, 2014 until the date of this judgment. This calculation equals: $ 3,487.63.

The Court **ORDERS** that Plaintiff MILA CHEATOM recover prejudgment interest on $ 83,362.50 (the actual damages awarded and excluding court costs and attorney fees) at the rate of 5% from April 28, 2014 until the date of this judgment. This calculation equals: $ 3,597.15.

DOCUMENT SCANNED AS FILED

The Court **ORDERS** that Plaintiff MARY WINTERS recover postjudgment interest on $ _93,619.78_ (the actual damages awarded plus the prejudgment interest plus the court costs plus the attorney fees) at the rate of 5% compounded annually from the date this judgment is entered until all amounts are paid in full.

The Court **ORDERS** that Plaintiff MILA CHEATOM recover postjudgment interest on $ _96,267.35_ (the actual damages awarded plus the prejudgment interest plus the court costs plus the attorney fees) at the rate of 5% compounded annually from the date this judgment is entered until all amounts are paid in full.

## SEVERANCE

The Court **ORDERS** that all claims against VILLA DIJON CONDOMINIUM ASSOCIATION, INC. and IMPLICITY MANAGEMENT COMPANY are severed from Cause No. 2015CI00148.

The Court **ORDERS** the court clerk (1) to assign the severed actions and parties the separate cause number of _2015CI 03926_ and (2) to copy the following documents and include them in that file:

1. Plaintiffs' Original Petition, Jury Demand and Request for Disclosure;
2. The Citation and Officer's Return for Villa Dijon Condominium Association, Inc.;
3. The Citation and Officer's Return for Implicity Management Company;
4. Plaintiffs' Default Judgment With Respect To Liability As To Villa Dijon Condominium Association, Inc. and Implicity Management Company;
5. The Certificates of Last Known Address for Villa Dijon Condominium Association, Inc. and Implicity Management Company;

DOCUMENT SCANNED AS FILED

6. A copy of the docket sheet;

7. A copy of this Final Default Judgment As To Villa Dijon Condominium Association, Inc. and Implicity Management Company; and

8. Exhibits 1 through 23 which were admitted into evidence at the hearing on the Final Default Judgment As To Villa Dijon Condominium Association, Inc. and Implicity Management Company.


**THIS JUDGMENT FINALLY DISPOSES OF ALL CLAIMS AND ALL PARTIES IN CAUSE NO. 2015CI 03926 AND IS APPEALABLE**


**THE COURT ORDERS EXECUTION TO ISSUE FOR THIS JUDGMENT**


SIGNED ON _March 9_, 2015

_____
PRESIDING JUDGE

DOCUMENT SCANNED AS FILED

**APPROVED AND ENTRY REQUESTED:**


**LEIBOWITZ LAW FIRM PLLC**


By: _____

JACOB S. LEIBOWITZ (jacob@leibowitzlaw.com)
Texas Bar No. 24066930
700 N St Mary's St, STE 1750
San Antonio, TX 78205
T (210) 225-8787
F (210) 225-2567
*ATTORNEY FOR*
*MARY WINTERS AND MILA CHEATOM*

DOCUMENT SCANNED AS FILED

# APPENDIX B

Cause No. 2015-CI-00148

and

Severed Cause No. 2015-CI-03926

| MARY WINTERS AND MILA CHEATOM | § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | 166TH JUDICIAL DISTRICT |
| 738 PROPERTY, LLC, CHAPA & FULLER | § | |
| REALTY, LLC, DENCITY DEVELOPMENT, | § | |
| LLC, VILLA DIJON CONDOMINIUM | § | |
| ASSOCIATION, INC, AND IMPLICITY | § | |
| MANAGEMENT COMPANY | § | |
| | § | |
| Defendants | § | BEXAR COUNTY, TEXAS |

### MOTION OF DEFENDANTS VILLA DIJON CONDOMINIUM ASSOCIATION, INC. AND IMPLICITY MANAGEMENT COMPANY TO SET ASIDE A DEFAULT JUDGMENT AND FOR A NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants, Villa Dijon Condominium Association, Inc. and Implicity Management Company, file this motion to set aside the March 9, 2015 default judgment against these Defendants and grant a new trial. In support of this motion, Defendants would show this honorable court the following:

### I. Introduction

Defendant Villa Dijon Condominium Association, Inc. (hereafter "Villa Dijon") is a condominium association in which each Plaintiff owns a condominium. Defendant Implicity Management Company (hereafter "Implicity") is a management company retained by Villa Dijon to manage the condominium association.

On January 6, 2015, Plaintiffs, Mary Winters and Mila Cheatom sued Defendants Villa Dijon and Implicity for breach of contract and negligence for not repairing foundation movement and related damage to Plaintiffs' units at the Villa Dijon Condominiums. The Court signed a Default Judgment for Plaintiffs against Villa Dijon and Implicity on March 9, 2015. In addition,

the court ordered that all claims against Villa Dijon and Implicity be severed from Cause No. 2015-CI-00148 into Cause No. 2015-CI-03926. The default judgment disposed of all claims and all parties in Cause No. 2015-CI-03926.

## II. Arguments and Authorities

A court should set aside a default judgment and grant a new trial if the defendant can meet the following requirements set out in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939):

a. Demonstrate that the failure to file an answer or appear at a hearing was not intentional or the result of conscious indifference, but was a mistake or accident. *Estate of Pollack v. McMurrey*, 858 S.W. 388, 391 Tex. 1993);

b. Set up a meritorious defense. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966); and

c. Demonstrate that granting a new trial will not result in delay or prejudice the plaintiff.

By this motion, Defendants will show that they easily satisfy these requirements and are entitled to having the default judgment set aside.

### A. Defendant's failure to answer was the result of a mistake or accident.

The court should grant a new trial because defendant's failure to answer was not intentional, but was a mistake or accident. On or about January 23, 2015, Plaintiffs served Jody Marquez, the registered agent for Villa Dijon and Implicity. Ms. Marquez is the president of Implicity, who manages Villa Dijon. After being served, Ms. Marquez had her office send the lawsuits to the insurance agents for Villa Dijon and Implicity as she had been previously been instructed by those agents so they could notify the insurer, who would then answer the lawsuit. As a result, Ms. Marquez believed that once she had sent the lawsuits to her insurance agents, the insurer would file an answer for Villa Dijon and Implicity. She even received an email from the insurance agent on February 17, 2015 stating that he had obtained an extension to answer the lawsuit, but no such answer was thereafter filed for either Villa Dijon or Implicity. After receiving the March 9, 2015 default judgment, Villa Dijon and Implicity retained the undersigned counsel to set aside the default judgment. These facts are supported by the attached affidavit of

Jody Marquez and clearly show that Villa Dijon's and Implicity's failure to answer was an accident or mistake and not the result of conscious indifference or intentional conduct.

**B. Defendants have a meritorious defense.**

Plaintiffs have sued Villa Dijon and Implicity for breach of contract and negligence for not repairing the foundation movement and related damage to Plaintiffs' condominiums. First, there is no contract between Plaintiffs and these Defendants. Under the Declarations and Bylaws of Villa Dijon, it only has the obligation of maintenance of the common elements of the association. It is not required to maintain or repair any portion of the common elements that serves only the individual unit owner's condominium, like the slab under Plaintiffs' unit. As a result, Villa Dijon does not have a duty to maintain or repair the foundation under Plaintiffs' condominiums. Since there is no such duty under the Declarations and Bylaws, Villa Dijon cannot be liable for any negligence in regards to that duty.

Defendant Implicity as the management company has no contract with Plaintiffs. It is also not responsible for the maintenance or repair of the common elements of Villa Dijon under the subject Declarations and Bylaws. As a result, it is also not liable for negligence in regards to any maintenance or repair duty on the foundation of Plaintiffs' condominiums.

**C. Plaintiffs will suffer no injury or harm in the granting of a new trial.**

The court should grant a new trial because a new trial will not delay or prejudice plaintiff. Defendants are ready for trial and are willing and able to reimburse Plaintiffs for all reasonably expenses incurred in obtaining the default judgment.

For all these reasons, and in the interest of justice and fairness, Villa Dijon Condominium Association, Inc. and Implicity Management Company request that the court grant this motion, set aside the March 9, 2015 final judgment, and award Villa Dijon and Implicity a new trial and such other relief as may be proper.

Respectfully submitted,

*Loree & Lipscomb,*
777 E. Sonterra Blvd., Suite 320
San Antonio, Texas 78258
Telephone: (210) 408-6320
Facsimile: (210) 408-6310
Email: rob@lhllawfirm.com

By: _____
Robert W. Loree
State Bar No. 12579200

Attorney for Defendants

## ORDER SETTING HEARING

It is ORDERED that a hearing on Defendants' Motion to Set Aside Default Judgment and

for a New Trial is set at 9:00 a.m. on April 10, 2015 in the presiding District Court, Room 109 of

Bexar County, Texas. 4/6/2015

**Cathleen M. Stryker**

**Presiding Judge**

Judge Presiding

**224th District Court**

## CERTIFICATE OF SERVICE

I hereby certified that counsel for Defendants has served a true and correct copy of this motion on counsel for Plaintiffs Jacob S. Leibowitz, 700 North St. Mary's Street, Suite 1750, San Antonio, Texas, by email to Jacob@leibowitzlaw.com and by facsimile transmission to (210) 225-2567.

_____
Robert W. Loree

Cause No. 2015-CI-00148

and

Severed Cause No. 2015-CI-03926

| | | |
|---|---|---|
| MARY WINTERS AND MILA CHEATOM | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | 166TH JUDICIAL DISTRICT |
| 738 PROPERTY, LLC, CHAPA & FULLER | § | |
| REALTY, LLC, DENCITY DEVELOPMENT, | § | |
| LLC, VILLA DIJON CONDOMINIUM | § | |
| ASSOCIATION, INC, AND IMPLICITY | § | |
| MANAGEMENT COMPANY | § | |
| | § | |
| Defendants | § | BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF JODY MARQUEZ

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jody Marquez, who after being duly sworn, stated as follows;

1. My name is Jody L. Marquez. I am over 18 years of age and I am fully competent to make this affidavit. I am the president and sole owner of Plaintiff, Implicity Management Company (hereafter "Implicity"), and have personal knowledge of the facts stated in this affidavit, all of which are true and correct.

2. I first became affiliated with the multifamily real estate leasing industry in 1985 when I took a part-time leasing position while working to become a licensed realtor in the state of Texas. Ever since, I have 30 years of experience in the residential real estate leasing and management industry.

3. In May 2009, I opened Implicity for business with my partners and in September of 2011, I became sole owner of the company. At all times since its opening, I have been president of Implicity.

4. In 2009, Villa Dijon Condominium Association, Inc. (hereafter "Villa Dijon") retained Implicity to manage the association. Under that management agreement, Implicity procures both the property and liability insurance for Villa Dijon, which is common practice in the industry. Pursuant to this responsibility, I procured such insurance

Case Number: 2015CI00148          Document Type. MOTION FOR NEW TRIAL AND SET ASIDE DEFAULT JUDGMENT

1

42

DOCUMENT SCANNED AS FILED

for Villa Dijon through an insurance agent, Commercial Insurance Solutions of Dallas Texas. Implicity also procured its insurance through the same agent. The agent instructed me to notify them whenever Implicity had a claim or lawsuit and the agent would then notify the insurer, which is standard practice in the industry.

5. Mary Winters and Mila Cheatom served me, Jody Marquez, on or about January 23, 2015. I am the registered agent for Villa Dijon and Implicity. After being served, I had my office send the lawsuits to my insurance agents for Villa Dijon and Implicity as I would when a claim or lawsuit occurs. The agents were supposed to notify the insurer, who would then answer the lawsuit for Villa Dijon and Implicity. Once I sent the lawsuits to my insurance agents, I believed that the matter would be taken care of and that the insurer would answer the lawsuits for Villa Dijon and Implicity.

6. I even received an email from the insurance agent on February 17, 2015 that said that he had obtained extension to answer the lawsuit, but no such answer was thereafter filed for Villa Dijon or Implicity. I did not intentionally fail to answer the lawsuit against Villa Dijon and Implicity and the insurance agents mistakenly failed to keep me informed. After receiving the March 9, 2015 default judgment, Villa Dijon and Implicity retained attorney Robert W. Loree to set aside the default judgment.

Further affiant sayeth not.

Jody L. Marquez, affiant

SWORN TO AND SUBSCRIBED BEFORE ME on April 6, 2015.

OFELIA LISA HERNANDEZ
Notary Public, State of Texas
My Commission Expires
June 26, 2017

Notary Public, State of Texas

My Commission expires: 6-26-17

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD NOW IN MY LAWFUL CUSTODY. WITNESS
MY OFFICIAL HAND AND SEAL OF OFFICE ON THIS:

*May 19, 2015*

DONNA KAY McKINNEY
BEXAR COUNTY, TEXAS

By: _____

LILYANA ESQUIVEL, Deputy District Clerk

*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

DOCUMENT SCANNED AS FILED

# APPENDIX C

Walsh
4th Fl. Elizondo Towers


CAUSE NO. 2015CI00148

COURT: 166   DATE/TIME: 04/10/2015 09:00AM
SETTING COURT: 109

STYLE: MARY WINTERS ET AL
VS. 738 PROPERTY LLC ET AL

DISCOVERY LEVEL: 3
ATTORNEY(S) FOR CASE:
JACOB LEIBOWITZ
ROBERT MCNIEL

SCOTT CLINE
ROBERT LOREE



TYPE OF MOTION OR APPLICATION:
NON-JURY SETTING ON M/F NEW TRIAL

RWL

CONFERRING_____  ESTIMATE HEARING TIME_____
AGREED ORDER_____  ASSIGNED COURT_____
DROP_____  RECORD TAKEN  Yes
INTERPRETER_____  RESET DATE_____ TIME_____

REPORTED BY
JUDY STEWART, C.S.R
(210) 335-0787

DATE OF NOTES 10 April 2015                    JUDGE INITIALS SAW

MNT / Set Aside DFJ - granted
conditioned on payment of $7,000 + costs
of 460.40 being paid not later than 12 noon
4/24/15 by delivery of $7,460.40 by cashiers
check made payable to Jacob Leibowitz +
plaintiffs.
FORMAL ORDER TO COME

44

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED   EXHIBIT "G"

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD NOW IN MY LAWFUL CUSTODY. WITNESS
MY OFFICIAL HAND AND SEAL OF OFFICE ON THIS:

*May 19, 2015*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _____

LILYANA ESQUIVEL, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

# APPENDIX D

VOLUME 4 OF 5 VOLUMES

TRIAL COURT CAUSE NO. 2015-CI-00148

MARY WINTERS, ET AL            )  IN THE DISTRICT COURT
                               )
VS.                            )  166TH JUDICIAL DISTRICT
                               )
738 PROPERTY, LLC, ET AL       )  BEXAR COUNTY, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
06/18/2015 3:26:35 PM
KEITH E. HOTTLE
Clerk

TRIAL COURT CAUSE NO. 2015-CI-03926

MARY WINTERS, ET AL            )  IN THE DISTRICT COURT
                               )
VS.                            )  166TH JUDICIAL DISTRICT
                               )
VILLA DIJON CONDOMINIUM        )
ASSOCIATION, INC., ET AL       )  BEXAR COUNTY, TEXAS

---------------------------------------------------------------

PLAINTIFF'S MOTION FOR RECONSIDERATION

MAY 1, 2015

VOLUME 4 OF 5 VOLUMES

---------------------------------------------------------------

On the 1st day of May 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE STEPHANI WALSH, Judge Presiding, held in the 45th District Court, San Antonio, Bexar County, Texas:

Proceedings reported by machine shorthand.

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

A P P E A R A N C E S:

MR. JACOB SAMUEL LEIBOWITZ
        SBOT: 24066930
MR. DAVID MCQUADE LEIBOWITZ
        SBOT:  12179800
        DAVID MCQUADE LEIBOWITZ, P.C.
        700 N. St. Mary's, Suite 1750
        San Antonio, Texas 78205
        Phone:  (210)225-8787
                ATTORNEYS FOR PLAINTIFF, MARY WINTERS


MR. TODD LIPSCOMB
        SBOT:  12579200
        LOREE & LIPSCOMB
        777 E. Sonterra Blvd., Suite 320
        San Antonio, Texas 78258-4276
        Phone:  (210)404-1320
                ATTORNEY FOR DEFENDANTS, VILLA DIJON CONDOMINIUM
ASSOCIATION, INC., ET AL


(Telephonically)

MR. ROBERT A. MCNEIL
        SBOT:  24043814
        DEANS & LYONS, LLP
        325 N. St. Paul Street, Suite 1500
        Dallas, Texas 75201
        Phone:  (214)965-8500
                ATTORNEY FOR DEFENDANTS, VILLA DIJON CONDOMINIUM
ASSOCIATION, INC.

**CHRONOLOGICAL INDEX**

VOLUME 4 OF 5 VOLUMES

MAY 1, 2015

|  | PAGE | VOL |
|---|---|---|
| CAPTION ....................................... | 1 | 4 |
| APPEARANCES ................................... | 2 | 4 |
| CHRONOLOGICAL INDEX ........................... | 3 | 4 |
| REPORTER'S CERTIFICATION....................... | 20 | 4 |

**PROCEEDINGS**

MAY 1, 2015

(1:42 p.m. before the Court.)

(Phone call made from the bench.)

THE COURT: This is Judge Walsh in San Antonio, Texas. And a Mr. Robert McNeil had requested to be part of a hearing telephonically.

UNIDENTIFIED SPEAKER: Okay. Please hold. Thank you.

MR. MCNEIL: Hello?

THE COURT: Mr. McNeil, this is Judge Walsh in San Antonio.

MR. MCNEIL: Hello, Judge. How are you?

THE COURT: I am fine. And we have not called the case. I just want to make sure that we could hear you and make sure you speak loud enough, so that's good.

MR. MCNEIL: Okay. I hear you just fine, Judge.

THE COURT: All right. And present in the courtroom is Mr. Lipscomb.

MR. LIPSCOMB: Yes. Todd Lipscomb on behalf of the defendants.

MR. JACOB LEIBOWITZ: And Jacob Leibowitz and David Leibowitz on behalf of the plaintiffs.

THE COURT: And can you hear Mr. Leibowitz?

MR. MCNEIL: I can, Your Honor.

THE COURT: All right. Then we'll call the case.

Calling Cause No. 2015-CI-00148, resuming a hearing which was initiated yesterday at 1:30. And for the record, would counsel make your announcements for the record since we have changed counsel a bit.

MR. JACOB LEIBOWITZ: Jacob Leibowitz and David Leibowitz for the plaintiffs, Your Honor.

MR. LIPSCOMB: And Todd Lipscomb on behalf of the defendants. I'm here to replace Mr. Loree who, after going to chemotherapy and radiation this morning, was unable to attend.

MR. MCNEIL: Robert McNeil on behalf of defendant, 738 Properties, LLC, and defendant, Density.

THE COURT: All right. Mr. Leibowitz, this was your motion yesterday, so if you have anything additional, you may present it to the Court.

MR. JACOB LEIBOWITZ: Your Honor, all I have is just some responses to the response I received from Mr. Lipscomb today right before the hearing, and I'd just like to make those arguments for the record.

THE COURT: And for the record, in the interim, defendants 738 -- or Villa Dijon Condominium has filed a response to plaintiff's motion for rehearing and

motion to deny entry of order granting new trial which has been filed with the court and provided to counsel.

Proceed, Mr. Leibowitz.

MR. JACOB LEIBOWITZ: Thank you, Your Honor.

Counsel has listed three different arguments for why the Court should ultimately have had jurisdiction.

The first is that the motion for new trial was timely filed in both the severed case and unsevered causes. And the reasoning that they put in this response is that the file stamped copy of the motion constitutes prima facia evidence that the motion was timely filed.

We spent a considerable amount of time yesterday, and I presented to the Court Plaintiff's Exhibit 1 and 2, which were admitted which were the docket sheets which are substantive proof, as opposed to prima facie proof, that that's not true, that the motion for new trial was not filed in the new cause number which dispenses with that argument.

Where respect to the second argument, the responses that even if the motion for new trial was filed solely in the non severed cause, the Court still has plenary power, and several paragraphs are spent on cases that are actually discussed in the *Levin v. Espinos*a case that I brought to the Court's attention yesterday which is the memorandum opinion.

And the *Levin v. Espinosa* case effectively shows why *Philbrook v. Berry* still applies and is still good law despite that these cases try and limit *Philbrook's* power. And in fact, there's several paragraphs, most explicitly on the copy I gave the Court yesterday, the second to the last page in the concurring opinion, that deals with the *Leal* case, *Leal v. City of Rosenberg.* And this is on the second to the last page which is in the concurring opinion for *Levin v. Espinosa.*

It says: Given the Supreme Court's trend toward putting substance over procedure when reviewing attempts to invoke appellate jurisdiction, some courts of appeal believe the Supreme Court has effectively overruled *Philbrook*. And it cites *Leal v. Rosenberg.*

And then it continues: Nevertheless, as the majority points out, the Supreme Court recently clarified that a motion for new trial may not be considered, quote, a bona fide attempt to invoke the appellate court's jurisdiction. And it's quoting *in re: K.A.F.*, which is *160 S.W. 3d 923, 2005 Texas Supreme Court* case.

So effectively, the second point which attempts to deal with all of the cases that *Levin v. Espinosa,* basically, dispenses with the terms of trying to eliminate the precedential value of *Philbrook*. None of those arguments actual prevail as a result.

And in C, the responses that in the alternative the Court should order that the motion for new trial was filed -- was filed in the severed cause action as of April 6th. And the reasons counsel cites Texas Rule of Civil Procedure 21(f)(6), talking about technical failures. There was -- there's no actual proof of a technical glitch with the electronic filing. There was a little bit of testimony that it seemed not to work, but there's no actual technical glitch with the system. The rule specifically says if a document is untimely filed due to a technical failure or system outage -- there's no proof whatsoever of a technical failure or system outage, which is their third argument.

And those are my current responses to the response.

THE COURT: Mr. Lipscomb.

MR. LIPSCOMB: Thank you, Your Honor. And it's nice to meet you.

What I'd like to go on first is straight in order. And if you look at Exhibit B to our motion, that is actually the file stamped copy that the district clerk returned to us.

Do you have a copy of it, Your Honor?

THE COURT: I do, Your Honor. I mean, I do.

MR. LIPSCOMB: You complement me. As you'll

see in the top left-hand corner, it shows it's file marked and stamped, and you'll see it has both cause numbers on it. If the clerk didn't do what they said and filed in the cause that the system prohibited us from filing it, why does that docket entry control over the stamped motion itself, which was not only stamped, but is then signed by the presiding judge, Kathleen Stryker, when she signs the fiat and changes the time of the hearing.

It's no different than if you have a docket entry on a hearing, an order then comes through, that subsequent order controls until it's modified. No different. There's no authority they have anywhere saying some docket sheet trumps the signed or the file stamped motion. And in fact, fiat order that has both cause numbers on it.

So we believe that that is evidence, and the only evidence that should be construed because a docket entry is not sufficient.

And by way of example, if this Court signed an order, and for some reason the clerk's office on a paper copy simply transposed it into the wrong file, would that somehow viciate the Court's order? No. Simply because there's an error on the clerk's end or on the computerized system's end does not eliminate the fact that it was done, signed and filed. And that's why we still have paper copies

so when errors like this do occur, they can be corrected because we have the paper to show that it was done. That's the first argument.

But the second argument goes to what I think of in most appellate areas nowadays, is that *Philbrook* is archaic. And what I mean by that is, the only case we've been able to find that really applies it now -- it's this memorandum opinion out of the Austin Court of Appeals that's February -- which I'm sure is probably going to be appealed. But what's significant about it, and it does go through some distinguishing cases, is that in that case, the clerk gave actual notice to the party that they didn't file it right. That's not this case. That's why the other procedural concerns aren't there.

When they did give the party notice, they filed the motion for new trial, but it was then untimely and they still could have availed themselves for a motion for extension of time. That is why it was rejected, is that when you fail to do that extension of time, you're not making a bona fide attempt to invoke the jurisdiction.

Now, the distinguishing factor on *Leal* is not on point. All it says in distinguishing *Leal* is that some courts confuse the notice of appeal and the motion for new trial. And that by implementing the motion for new trial is not sufficient enough to invoke the appellate court's

jurisdiction, which in turn is actually done by the notice of appeal. They don't say it's bad. They don't say anything else because they acknowledge that virtually all the other courts of appeals have thrown *Philbrook* out the window.

Yesterday, Rob came back to my office and had an excellent question. And he says: Is there a difference between extending the plenary power of the trial court and the appellate jurisdiction being invoked by notice of appeal? I looked hard. I don't have an answer. There's probably some brighter minds than me looking at the darn thing.

But what I do come up with is the idea of they're both jurisdictional documents. They're both situations that vest the court with power in one form or another. And what the trend has been, since the court has changed in the early '90's, all been towards the bona fide dispute standard. And is there something there that shows or puts the other parties or the courts on notice that this is something that's either being appealed or requested for a new trial. And there's no reason it should have a different standard.

In every case they rely upon, it is a situation where there has completely omitted a number. They filed it in the severed cause, they should have filed it in

the unsevered cause, and there's no cause number here. Our document has both. There's no way you can construe a document that has both cause numbers on there as not a bona fide attempt to invoke it in both cases. And that's the one distinguishing factor that throws all of their cases out the window. Because in this case, it has to be construed as a bona fide attempt because it has both cause numbers and it asks it to reverse the final judgment, to the best my knowledge, has only been done in the severed cause.

That is why some appellate practitioners recommending putting both causes of action on one document is so that you don't have conflicts between the two because many times you can transpose it and have the parties or something being different.

So what they suggest is dot your "I's," cross your "T's," file it in both. And at worse, it's not necessary in one of them. And that's exactly what was done here.

The third argument, he says there's no evidence of a technical glitch. I disagree. The affidavit of Lisa Villarreal Hernandez is attached to our motion and explains exactly what happened. She filed it in one. It accepted it in the non severed cause.

When she went to file it in the severed cause, the screen, when you try to do it, blanked out. Someone in

the clerk's office had closed it, wouldn't allow it to enter. She couldn't type in the numbers. She then called the clerk's office and they said, we can take care of it on our end. Okay.

She then, after that's done, gets Exhibit B back, a file marked copy showing the style with both cause numbers and a stamp showing that it was filed. It doesn't say it was only filed in Cause No. 00148. The Court clerk could have put that on there. It doesn't say that it was not filed in 3926. It just simply says "filed," and there are both cause numbers attached to it.

Now, if there's an error, just like they did in the Espinosa case, the clerk could have notified us and said, you know what, there's a problem with this document. They didn't do it. They didn't do it because everyone believed at the time you had the hearing on April 10th that it was in both causes. This wasn't raised until after the fact, after we had already given them the money for the sanctions the Court ordered. And so now they don't like the result and they're asking you to reverse yourself.

MR. JACOB LEIBOWITZ: I would like to address several things. First, the technical glitch argument.

Again, in the affidavit, which is Exhibit A to their response, when talking about the clerk, it's still hearsay, which means it's not actual proper evidence before

the Court. It says that the clerk's -- with respect to the clerk, it says at the bottom of page 1 of Exhibit A, she told me that I may be having problems filing into the severed case because the case was closed, but that she would file the document into the severed cause. Hearsay. It doesn't go to her state of mind -- well, even if it does, her state of mind isn't relevant.

THE COURT: So are you lodging an objection to their evidence?

MR. JACOB LEIBOWITZ: Yes. So hearsay to the -- whatever the clerk said.

With respect to Mr. Lipscomb's characterization of what actually happened, there was no testimony yesterday that the screen went blank. I don't remember that at all. And quite frankly, Your Honor, there's still been no evidence whatsoever -- every time that we all file something, we get email saying it was accepted or not. And there's been no evidence offered of the email that actually -- that we would actually receive from the Court saying "accepted." Typically, that email will have case identifying information that would have allowed us probably to figure it out, but that was never offered.

THE COURT: If you'll recall, I asked that question yesterday.

The problem I have, Mr. Lipscomb, is that all

of these cases all address attempts to invoke the appellate jurisdiction. And in all the cases, the appellate court find that the parties -- regardless of which error it is, type of error, that they made a bona fide attempt to invoke appellate jurisdiction and they allowed the appellate process to continue and proceed on to the appeals court.

But I -- the same question that Mr. Loree ran back to the office and asked you is the question and the argument that Mr. Leibowitz made is that I don't have the power. I did not have the power on the 10th, which you talked about vesting of jurisdiction. My problem is that I think that when the deadline passed, that I had been de-vested jurisdiction on the 8th of April.

With regards to the technical error, and frankly, perhaps, this is the case that will allow the Fourth Court to define when you make a bona fide attempt to file with our new electronic system and mistakes happen, that you should be given the benefit of the doubt. But from a technical standpoint, I did ask about the email yesterday, and you do receive an email. And she said she did not receive an email.

And when you receive only one document back when you have tried to file two documents, that would be your first clue that something was wrong.

It was a Monday, and as Mr. Leibowitz pointed

out yesterday, you can check the docket at any time to see if your document ended up getting filed, which is why I asked about the email because the email comes back and lets you know which cause number and whether or not it was accepted or not. And if the clerk was -- or the paralegal was following the proper procedure, she needed to have filed -- made two attempts, one under the old cause number and then a second filed under the new cause number as if it was a totally different lawsuit and she would have received back two file stamped copies.

MR. LIPSCOMB: May I respond, Your Honor?

THE COURT: Yes.

MR. LIPSCOMB: My understanding of that system is that it's not a document that's generated by a person, but by a computer. So you will not receive one. It was not done by the computer, but it was manually by the clerk's office.

MR. JACOB LEIBOWITZ: His statement is no proof of that.

THE COURT: Well, again, we didn't have any of that evidence yesterday either way. And that is part of the problem. I did try to contact both of the supervising clerks, and I had one while the counsel was here to let them know what they said, which was another alternative was to have counter-filed the old fashioned way.

MR. LIPSCOMB: And there was another issue today, Your Honor. We went in to file today, we were able to file a response in both cases, which is now open. So it's changed that status in the meantime since you had your call to the clerk's office.

THE COURT: Well, what I shared with them yesterday is that it is never closed. So the comment and testimony by Ms. Villarreal that it was closed is inconsistent with what I was told by the district clerk. They never close the files, computer-wise or otherwise.

I go back to -- I've lost jurisdiction on the 30th day. And this is a memorandum opinion, but it does seem to discuss the archaic position of *Philbrook*, but it doesn't set it aside either. So perhaps, this Fourth Court needs to set it aside. But I'm going to find that I do not have -- did not have jurisdiction on the 10th, and vacate my order which I think requires you to give back the money.

MR. JACOB LEIBOWITZ: Which is perfectly fine, Your Honor.

Your Honor, just so it's on the record. Here is the envelope it was sent in as well as the original check and the letter that it was sent with. So if the record could reflect that I have now given back to counsel the $7,460 that was sent.

MR. LIPSCOMB: And I'll reflect that we do

have a copy of the check. I'll let you have the letter for your records.

MR. JACOB LEIBOWITZ: You have the original check.

MR. LIPSCOMB: I have the original check.

THE COURT: And I want to make sure that all the documents and exhibits are here. So, Mr. Lipscomb, since you weren't here yesterday, Mr. Loree put in Defendant's Exhibit 1, and it was the motion, I believe. And I'd ask the clerk to take a break from the record and check that because I had the staff attorneys research this this morning for me so they took some documents to look at them as well. So I want to make sure for the record.

MR. JACOB LEIBOWITZ: And before we go off the record, Your Honor, I'm not sure if it matters, but could I get a ruling on the hearsay on the affidavit.

THE COURT: Oh, yes. That's sustained.

MR. LIPSCOMB: Your Honor, can I respond briefly just for the record? One, it's not be offered for the truth of the matter being asserted. The idea that the clerk says she's going to file it or not when obviously the clerk did not do so, there's no truth being asserted. It simply goes to the person's state of mind.

Secondly, we do have the testimony from Ms. Villarreal that is sworn to in the affidavit indicating

the computer system prevented her from filing it.

THE COURT:  And she so testified to that yesterday.

MR. LIPSCOMB:  Thank you.

(Proceedings concluded at 2:03 p.m.)

THE STATE OF TEXAS )
COUNTY OF BEXAR    )

          I, Judith A. Stewart, Official Court Reporter in and for the 45th District Court of Bexar County, of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

          I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

          I further certify that the total cost for the preparation of this Reporter's Record is $543.00 and was paid by Defendant.

          WITNESS MY OFFICIAL HAND this the 12th day of June 2015.

                              /s/ Judith A. Stewart
                              Judith A. Stewart, CSR
                              Official Reporter
                              Texas CSR 5471
                              Expiration:  12/31/15
                              45th District Court
                              100 Dolorosa
                              San Antonio, Texas  78205
                              (210)771-7732

# APPENDIX E

---

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 1. General Rules (Refs & Annos)

TX Rules of Civil Procedure, Rule 21

Rule 21. Filing and Serving Pleadings and Motions

Currentness

(a) *Filing and Service Required.* Every pleading, plea, motion, or application to the court for an order, whether in the form of a motion, plea, or other form of request, unless presented during a hearing or trial, must be filed with the clerk of the court in writing, must state the grounds therefor, must set forth the relief or order sought, and at the same time a true copy must be served on all other parties, and must be noted on the docket.

(b) *Service of Notice of Hearing.* An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, must be served upon all other parties not less than three days before the time specified for the hearing, unless otherwise provided by these rules or shortened by the court.

(c) *Multiple Parties.* If there is more than one other party represented by different attorneys, one copy of each pleading must be served on each attorney in charge.

(d) *Certificate of Service.* The party or attorney of record, must certify to the court compliance with this rule in writing over signature on the filed pleading, plea, motion, or application.

(e) *Additional Copies.* After one copy is served on a party, that party may obtain another copy of the same pleading upon tendering reasonable payment for copying and delivering. Tx. Supreme Court Misc. Dkt. No. 13-9165 Court of Criminal Appeals Misc. Dkt. No. 13-003

*(f) Electronic Filing.*

(1) Requirement. Except in juvenile cases under Title 3 of the Family Code and truancy cases under Title 3A of the Family Code, attorneys must electronically file documents in courts where electronic filing has been mandated. Attorneys practicing in courts where electronic filing is available but not mandated and unrepresented parties may electronically file documents, but it is not required.

(2) Email Address. The email address of an attorney or unrepresented party who electronically files a document must be included on the document.

(3) Mechanism. Electronic filing must be done through the electronic filing manager established by the Office of Court Administration and an electronic filing service provider certified by the Office of Court Administration.

---

(4) Exceptions.

    (A) Wills are not required to be filed electronically.

    (B) The following documents must not be filed electronically:

        (i) documents filed under seal or presented to the court in camera; and

        (ii) documents to which access is otherwise restricted by law or court order.

    (C) For good cause, a court may permit a party to file other documents in paper form in a particular case.

(5) Timely Filing. Unless a document must be filed by a certain time of day, a document is considered timely filed if it is electronically filed at any time before midnight (in the court's time zone) on the filing deadline. An electronically filed document is deemed filed when transmitted to the filing party's electronic filing service provider, except:

    (A) if a document is transmitted on a Saturday, Sunday, or legal holiday, it is deemed filed on the next day that is not a Saturday, Sunday, or legal holiday; and

    (B) if a document requires a motion and an order allowing its filing, the document is deemed filed on the date that the motion is granted.

(6) Technical Failure. If a document is untimely due to a technical failure or a system outage, the filing party may seek appropriate relief from the court. If the missed deadline is one imposed by these rules, the filing party must be given a reasonable extension of time to complete the filing.

(7) Electronic Signatures. A document that is electronically served, filed, or issued by a court or clerk is considered signed if the document includes:

    (A) a "/s/" and name typed in the space where the signature would otherwise appear, unless the document is notarized or sworn; or

    (B) an electronic image or scanned image of the signature.

(8) Format. An electronically filed document must:

    (A) be in text-searchable portable document format (PDF);

(B) be directly converted to PDF rather than scanned, if possible;

(C) not be locked; and

(D) otherwise comply with the Technology Standards set by the Judicial Committee on Information Technology and approved by the Supreme Court.

(9) Paper Copies. Unless required by local rule, a party need not file a paper copy of an electronically filed document.

(10) Electronic Notices From the Court. The clerk may send notices, orders, or other communications about the case to the party electronically. A court seal may be electronic.

(11) Non-Conforming Documents. The clerk may not refuse to file a document that fails to conform with this rule. But the clerk may identify the error to be corrected and state a deadline for the party to resubmit the document in a conforming format.

(12) Original Wills. When a party electronically files an application to probate a document as an original will, the original will must be filed with the clerk within three business days after the application is filed.

(13) Official Record. The clerk may designate an electronically filed document or a scanned paper document as the official court record. The clerk is not required to keep both paper and electronic versions of the same document unless otherwise required by local rule. But the clerk must retain an original will filed for probate in a numbered file folder.

**Credits**
Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Sept. 20, 1941, eff. Dec. 31, 1941; Aug. 18, 1947, eff. Dec. 31, 1947; July 11, 1977, eff. Jan. 1, 1978; June 10, 1980, eff. Jan. 1, 1981; April 24, 1990, eff. Sept. 1, 1990; Dec. 11, 2013, eff. Jan. 1, 2014; Aug. 28, 2015, eff. Sept. 1, 2015.

Vernon's Ann. Texas Rules Civ. Proc., Rule 21, TX R RCP Rule 21
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.